IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BYRON E. ADAMS, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:21-CV-00748-MAB |
| | ) |
| D. LARSON AND ROB JEFFREYS, | ) |
| | ) |
|        Defendants. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Presently before the Court are a series of motions filed by Plaintiff. For the reasons set forth below, Plaintiff's motion for preliminary injunction is DENIED without prejudice (Doc. 34). Plaintiff's motion for a picture to be taken is DENIED (Doc. 42). Similarly, Plaintiff's motion to add additional information and motion for conference are also DENIED (Docs. 56, 57). Finally, Defendant Jeffreys' motion to strike is DENIED (Doc. 58).

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on June 29, 2021 (Doc. 1). He claims that while incarcerated at Big Muddy Correctional Center ("Big Muddy"), Defendant Larson, a prison physician, denied him adequate medical care and a special diet for his diabetes (Doc. 15, p. 1).

Plaintiff transferred to Big Muddy from Stateville Correctional Center ("Stateville") on January 29, 2020 and soon thereafter met with Defendant Larson, a

doctor at Big Muddy, to discuss his medical file (Doc. 15, p. 2). While at Stateville, Plaintiff received a special diet, twice-daily insulin, and other medications for his diabetes. When Plaintiff asked Defendant Larson if the same treatment regimen would continue at Big Muddy, Defendant Larson explained that the administration would not authorize a diabetic diet (*Id.*). Plaintiff received a permit for two pillows and two mattresses at Stateville because of his bilateral cataract surgery and pain caused by a knot in his back, but Defendant Larson refused to renew both permits because, according to Plaintiff, the administration would not allow it (*Id.*).

Defendant Larson ordered X-rays of Plaintiff's back and diagnosed him with arthritis (*Id.*). He gave Plaintiff muscle relaxers and pain pills, but Plaintiff contends these medications were not adequate to address his pain. Plaintiff details that Defendant Larson disregarded ongoing complaints of persistent pain and refused to issue him permits for double pillows and mattresses.

Following a threshold review of the complaint pursuant to 28 USC § 1915A, Plaintiff was permitted to proceed on two claims:

> **Count 1**    Eighth Amendment claim against Defendant Larson for denying Plaintiff adequate medical care for his diabetes, back pain, and cataract recovery and;
>
> **Count 2**    ADA/RA claim against Defendant Jeffreys, in his official capacity, for failing to adequately accommodate his diabetes, back pain, and cataract recovery.

(Doc. 15).

On January 10, 2022, Plaintiff filed a motion for preliminary injunction (Doc. 34). Then, on February 10, 2022, he filed a motion for a picture to be taken (Doc. 42). A month

later, on March 9, 2022, Plaintiff filed a motion to add additional information and a motion for conference with the Judge (Docs. 56, 57). In response to Plaintiff's motions to supplement and for a conference/hearing with the Judge, Defendant Jeffreys filed a motion to strike these motions (Doc. 58). The Court will discuss each in turn.

### DISCUSSION

I.    Plaintiff's Motion for Preliminary Injunction

Plaintiff's motion for preliminary injunction details that since filing his lawsuit, he has put in numerous sick call slips to see Defendant Larson for a variety of reasons, including 3-4 requests to have his toenails cut (Doc. 34, p. 1). Plaintiff outlines that Defendant Larson is the person who has to cut diabetic prisoners' toenails (*Id.*). Plaintiff further explains that he put in a sick call slip on December 1, 2021 and was seen by the nurse on December 4, who told him she put in a note for him to see Defendant Larson about his toenails (*Id.* at 2). Plaintiff then submitted another request on December 19, 2021 and then filed a grievance about this issue on December 26, 2021 (*Id.*). As of the date of Plaintiff drafted the motion for preliminary injunction, which was January 5, 2022, Defendant Larson had not seen Plaintiff or cut his toenails (*Id.*).

Additionally, Plaintiff says that Defendant Larson ordered him a new wheelchair, gloves, stockings for his legs, and diabetic shoes "last year," but he has not received any of these necessary medical items. Plaintiff filed an emergency grievance about these items, but contends the Warden and Defendant Larson are ignoring him (*Id.*). Plaintiff describes that the prison was on lockdown around Christmas 2021, but that Defendant Larson should have continued medical treatment and cut Plaintiff's toenails even during

this lockdown (*Id.* at p. 3). Plaintiff fears that he will lose another toe (he says he lost his big right toe due to infection), if Defendant Larson does not address his medical needs (*Id.* at p. 4). As for relief, Plaintiff seems to be asking for Defendant Larson to see him immediately and cut his toenails, as well as provide him with his new wheelchair, gloves, stockings, and diabetic shoes. Additionally, Plaintiff requests the Court order his transfer to another facility so he "can receive the right medical treatment before something happen[s]" (*Id.* at p. 5).

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)).

In the context of prisoner litigation, the scope of the court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). The PLRA instructs the court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief" and dictates that any preliminary injunctive relief "must

be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683. The Seventh Circuit has described injunctions like the one sought here, requiring an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

The Court must first examine whether Plaintiff has established that he is likely to succeed on the merits of his claims. "A movant's showing of likelihood of success on the merits must be 'strong.'" *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2798 (2021) (quoting *Ill. Republican Party*, 973 F.3d at 762–63). "A 'strong' showing . . . does not mean proof by a preponderance . . . . But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Tully*, 977 F.3d at 613.

Defendants Larson and Jeffreys filed separate responses to the motion for preliminary injunction, and asserted separate, but related arguments. Both argue, generally, that Plaintiff will not succeed on the merits of his claims and therefore cannot establish the first threshold factor for granting a preliminary injunction. More specifically, Defendant Larson asserts that Plaintiff has failed to exhaust his administrative remedies; therefore, he cannot succeed on the merits of his claims and the Court must deny his motion (Doc. 51, p. 6). Furthermore, Defendant Larson argues that Plaintiff is simply not

being denied medical care for his diabetes (Doc. 51, pp. 7-9). Similarly, Defendant Jeffreys argues that Plaintiff's allegations regarding his toenails and sores on his feet are unrelated to the allegations in the complaint and that Plaintiff, as a prisoner, has no constitutional right to be housed in a particular prison, so the Court cannot order Plaintiff to be moved (Doc. 49, p. 5). Defendant Jeffreys argues, like Defendant Larson, that Plaintiff cannot say that his medical care is inadequate, as he has been regularly seen by medical professionals throughout his time at Big Muddy. In support, Defendant Jeffreys submitted Plaintiff's medical records (Doc. 49-1).

The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). As a result, a determination of Plaintiff's likelihood of success on the merits must begin here, with exhaustion. *See Hampton v. Baldwin*, No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730 (S.D. Ill. Nov. 7, 2018) ("Before addressing the merits of [plaintiff's] motion for preliminary injunction, the Court must determine whether she has exhausted her administrative remedies with regard to the injunctive relief she seeks."). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois

Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq*. (2017). In other words, exhaustion of available administrative remedies is a precondition to suit. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Therefore, when considering a motion for preliminary injunction, "[e]ven if Plaintiff's claim for preliminary injunctive relief has some merit, he would not be entitled to such relief if the Court finds that he failed to exhaust his administrative remedies." *Thompson v. Illinois Dep't of Corr.*, No. 3:15-CV-850-NJR-DGW, 2016 WL 5341198, at *3 (S.D. Ill. Sept. 23, 2016) (citing *McClure v. Yurkovich*, 2013 WL 1755505, *2-3 (C.D. Ill. 2013)). Put simply, a plaintiff will not be successful in seeking injunctive relief unless he has exhausted administrative remedies.[1]

The parties disagree as to whether Plaintiff fully exhausted his administrative remedies prior to filing suit. Defendant Larson submitted Plaintiff's grievance records from the Administrative Review Board claiming that they show Plaintiff has not filed grievances related to the issues central to this case; therefore, the preliminary injunction must be denied as Plaintiff cannot succeed on the merits of his case (Doc. 51, p. 6). Plaintiff argues he did fully grieve the claims at issue, but that at least one pertinent grievance has somehow gone missing from his records (Doc. 56, pp. 1-2). It seems that Plaintiff is arguing, essentially, that he was thwarted from exhausting his administrative remedies

---

[1] An emergency does not exempt an inmate from exhausting his administrative remedies. *Hampton v. Baldwin,* No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730 (S.D. Ill. Nov. 7, 2018) (citing *Maxey v. Cross,* No 14-cv-01263-JPG-SCW, 2015 WL 507213, at *4 (S.D.Ill. Feb. 5, 2015). Put another way, there is no imminent danger exception to the exhaustion requirement. *Jackson v. Brookhart,* 20-cv-237-DWD, 2022 WL 345045, at *4 (S.D.Ill Feb. 4, 2022) (citing *Fletcher v. Menard Corr. Cntr.,* 623 F.3d 1171, 1173, 1175 (7th Cir. 2010) ("imminent danger did not excuse his failure to exhaust his administrative remedies.")). "Instead, Illinois has an emergency grievance procedure for prisoners who claim to be in urgent need of attention." *Hampton*, 2018 WL 5830730, at *8 (citing *Fletcher*, 623 F.3d at 1174) (citation omitted).

because this grievance has disappeared. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.").

Typically, issues related to exhaustion are brought through a defendant's motion for summary judgment on the issue of exhaustion and not through a motion for a preliminary injunction. The parties here do not agree that the current grievances before the undersigned tell the full story of Plaintiff's attempts at grieving the issues central to his case. When there are contested issues of fact, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve these contested issues of fact regarding a person's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). A review of the docket shows that the parties are currently in the middle of discovery on the issue of exhaustion and that dispositive motions related to exhaustion are due on or before May 2, 2022 (Doc. 55). Therefore, the Court believes it will be more efficient to determine the issue of exhaustion, considering the parties' different stories, prior to resolving the issue of the preliminary injunction. *See Thompson,* 2016 WL 5341198 (denying without prejudice a prisoner's motion for preliminary injunction, in part, in order to resolve the issue of exhaustion). Accordingly, the motion for preliminary injunction is denied without prejudice. Plaintiff will be granted leave to refile his motion once the issue of exhaustion has been resolved.

The Court offers a thought, however, for Plaintiff to consider. The Constitution does not guarantee that a prisoner can be placed in a particular prison. *See Cisneros v. Welich*, 2021 WL 857334 (S.D.Ill. March 8, 2021) (citing to *Meachum v. Fano*, 427 U.S. 215 (1976)). Should Plaintiff choose to renew his motion for preliminary injunction after exhaustion has been resolved, the Court will not likely be able to order at least part of the remedy he seeks (*i.e.*, being moved to another prison). Additionally, Plaintiff would need to show how the issues he is complaining of in the motion for preliminary injunction directly relate to the issues he brings in his complaint.

II.     Plaintiff's Motion for Picture to be Taken

On February 10, 2022, Plaintiff filed a motion for a picture to be taken (Doc. 42). In the motion, Plaintiff requests the Court to Order Defendants to take a picture of his left foot, specifically the second toe, and his right foot, as he alleges that his right foot's second toe is now completely black (Doc. 42, p. 1). Plaintiff argues the issues with his feet are the result of his diabetes and of Defendants not properly caring for his feet. *Id.* Plaintiff further claims that although he was instructed by Big Muddy officials to make sure that Defendant Larson sees his foot, Plaintiff has been unable to see Defendant Larson to have him inspect his feet and cut his toenails (*Id.* at p. 3). Plaintiff asks for the Court to grant his motion so that the undersigned can ensure he is not "making up" these issues (*Id.*).

Defendant Jeffreys responded to Plaintiff's motion, arguing that a picture is unnecessary, as Plaintiff has described in detail his injuries (Doc. 48). Additionally, Defendant Jeffreys highlights that as part of his response to the motion for preliminary

injunction, he plans to submit medical records which will also capture a summary of Plaintiff's treatment. Therefore, Defendant Jeffreys argues the motion should be denied.

After reviewing the medical records before the Court, the Court can discern that the issues with Plaintiff's foot are already captured by his current medical records. Therefore, the Court does not see reason to grant Plaintiff's motion at this time. Plaintiff's medical records indicate that on January 29, 2022, he was seen by a Big Muddy nurse, who recorded hat he had a blister he "just noticed…today" (Doc. 49-1p. 7). There is a note on February 6, 2022 as well indicating that Plaintiff has a 2cm diameter black area on his right second toe (*Id.* at p. 8). There are additional medical records that record issues with Plaintiff's feet. The Court does note, however, that some of the records are difficult to read. For example, there is a medical note dated February 14, 2022 that indicates Plaintiff was seen by a doctor for his toe issues, but the notes are illegible and the Court cannot determine what course of treatment was given at this time (*Id.* at p. 10). There are a few other medical notes from this time period which indicate Plaintiff was seen at nurse sick call (*Id.* at pp. 1-16).[2]

Plaintiff's motion for a picture will be denied at this time since there are medical notes recording some of these issues. If Plaintiff renews his motion for preliminary injunction and feels that a picture should be taken of his foot to support that motion, he

---

[2] The Court notes that Plaintiff's medical records indicate that some of the issues complained of in his motion for preliminary injunction may have already been resolved. For example, a form dated January 27, 2022 indicates Plaintiff was approved for wheelchair gloves. In the next medical note, a February 1, 2022 form indicates Plaintiff was approved for a wheelchair (*Id.* at pp. 16-17).

should indicate how his current medical records are insufficient to capture the issues with his feet.

### III. Plaintiff's Motion to Add Information and for Conference

On March 9, 2022, Plaintiff filed a motion to add additional information and a motion for conference with Judge (Docs. 56, 57). In the motion to add additional information, Plaintiff argues that he did fully exhaust administrative remedies; therefore, any argument relating to exhaustion made by Defendants is incorrect (Doc. 56, p. 1). He also argues that the grievance related to the issues in this case is no longer in his possession (*Id.* at pp. 1-2). Plaintiff's second motion, the motion for conference, argues that Plaintiff has not received all discovery in this case, including medical records, so he requests a conference with the undersigned to discuss these missing documents (Doc. 57, pp. 2-3).

On March 21, 2022, Defendant Jeffreys filed a motion to strike in response (Doc. 58). In the motion, Defendant Jeffreys argues, simply, that the Court should strike Plaintiff's motion to add additional information and motion for conference because they "contain no new substantive allegations…and…should be stricken as they will only serve to confuse the record in this matter" (Doc. 58, p. 2).

Under Rule 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike, however, are generally disfavored, and there is a general judicial consensus that "they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of

significant prejudice to one or more of the parties to the action" 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Although the allegations at issue may be superfluous or repetitive, Defendant Jeffreys makes no argument that they are prejudicial in any manner, (*see* Doc. 58), and the Court has no reason to believe that might be the case. Consequently, the motion to strike is denied.

With this said, Plaintiff's motion to add additional information is also denied, as this matter is currently progressing towards dispositive motions on the issue of exhaustion, so there is no reason to supplement the record for the preliminary injunction with this material. Similarly, as the parties are engaged in discovery on the issue of exhaustion, the Court also denies Plaintiff's motion for conference (Doc. 57). Once Defendants file dispositive motions on the issue of exhaustion and Plaintiff has had an opportunity to respond, the Court will determine whether a hearing is necessary.

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for preliminary injunction is **DENIED without prejudice** and Plaintiff is granted leave to refile once the issue of exhaustion of administrative remedies is resolved (Doc. 34). Dispositive motions on the issue of exhaustion of administrative remedies are due on or before May 2, 2022 (Doc. 55). If the Court determines that there are issues of fact, the Court will set this matter for a *Pavey* hearing. Because the motion for preliminary injunction is being denied, Plaintiff's motions for a picture to be taken (Doc. 42); to add additional information (Doc. 56); and

for conference with Judge (Doc. 57) are also **DENIED**. Defendant Jeffreys' motion to strike (Doc. 58) is **DENIED**.

    **IT IS SO ORDERED.**

    **DATED: April 25, 2022**

                                                    <u>s/ Mark A. Beatty</u>
                                                    **MARK A. BEATTY**
                                                    **United States Magistrate Judge**