IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BYRON E. ADAMS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:21-CV-0748-MAB |
| | ) | |
| DENNIS LARSON and | ) | |
| ROB JEFFREYS, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for partial summary judgment on the issue of exhaustion filed by Defendant Dennis Larson, M.D. (Doc. 63. *See also* Doc. 64), and the motion for summary judgment on the issue of exhaustion filed by Defendant Robert Jeffreys, who is a defendant in his official capacity only (Doc. 68. *See also* Docs. 69, 71). For the reasons explained below, the motions are DENIED.

### BACKGROUND

Plaintiff Byron Adams, an inmate at Big Muddy River Correctional Facility ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act and/or Rehabilitation Act (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

**Count 1:** Eighth Amendment claim against Larson for deliberate

indifference to a serious medical need for denial of double pillows, double mattresses, and a special diet to treat his diabetes, back pain, and cataract recovery, following Plaintiff's arrival at Big Muddy on January 29, 2020.

**Count 2:** ADA and/or RA claim against Jeffreys, in his official capacity only, related to the denial of double pillows, double mattresses, and a special diet.

(Doc. 15).

Larson filed a motion for partial summary judgment on April 29, 2022 (Doc. 63. *See also* Doc. 64). Larson argues that Plaintiff filed one grievance regarding Larson denying him a special diet (Doc. 64), and after the grievance was denied at the institutional level, Plaintiff did not appeal the grievance to the Administrative Review Board ("ARB"). Thus, Larson argues, Plaintiff did not exhaust his administrative remedies (Doc. 64). Larson does not argue that Plaintiff did not exhaust his administrative remedies regarding the denial of double pillows and mattresses. Thus, it appears that Larson has conceded the issue.

Jeffreys filed a motion for summary judgment on May 2, 2022 (Doc. 68. *See also* Docs. 69, 71). Like Larson, he argues that Plaintiff failed to exhaust his administrative remedies regarding the denial of a special diet. However, he argues that Plaintiff submitted two grievances, not one, and that he did not appeal the denials of either grievance to the ARB (Doc. 69).

Jeffreys also argues that although Plaintiff submitted three grievances regarding Larson's denial of double pillows and mattresses and appealed two of those denials to the ARB, he did not exhaust his administrative remedies because the ARB refused to review them for failure to comply with "DR. 504.810." *See* Ill. Admin. Code tit. 20, §

504.810(a) (requiring grievances to be filed within 60 days of the incident giving rise to the grievance) (Doc. 69).

Plaintiff filed responses to Defendants' motions on May 25, 2022 (Docs. 73, 74). In the responses and an accompanying self-executed affidavit, Plaintiff attests that it is clear from his extensive history of appeals to the ARB, that he knows how to use and exhaust the grievance process (Docs. 73 at p. 10, 20-22; Doc. 74 at p. 13-14, 24-25). Thus, he attests, the only explanation as to why he did not exhaust his remedies regarding the denial of a special diet is that personnel removed the appeal from the ARB log *(Id.)*. He further attests that he sent a December 24, 2020 grievance, in which he complained about Larson's denial of a special diet and double bedding, to the IDOC director, "because the warden deemed it an emergency" (Docs. 73 at p. 20-21; 74 at p. 24-25). Finally, as either proof of Big Muddy personnel tampering with the grievance process or an explanation as to why he does not have additional evidence of exhaustion, he attests that Big Muddy personnel removed his copy of at least one grievance against Larson from his legal box. He does not specify which grievance was removed *(Id.)*.

In reply to Plaintiff's response, Larson argues that Plaintiff has no evidence to support his claim that personnel removed a grievance regarding denial of a special diet from the ARB log or failed to submit it to the ARB (Doc. 77).

### A. Grievances Regarding Denial of a Special Diet

Plaintiff's grievance file shows that on April 26, 2020, Plaintiff submitted a grievance stating that he had seen Dr. Larson that day, and Larson had refused to submit an order requiring Plaintiff to be served a diabetic or 1,800 calorie diet (Docs. 64-2 at p.

85-86; 71-1 at p. 73). A counselor reviewed the grievance on May 19, 2020 and denied it, stating that Plaintiff had been purchasing large quantities of food high in sugar and carbohydrates from the commissary and advising Plaintiff to quit doing so (*Id.*). The Grievance Officer recommended that the grievance be denied, and the warden concurred (Docs. 64-2 at p. 83; Doc. 71-1 at p. 71).[1] The grievance does not appear on the ARB log and there is no record of a response from the ARB (Docs. 64-3 at p. 9-11; 71 at p. 1-2). In a grievance dated December 24, 2020, Plaintiff again requests a special diet, as well as a permit for 2 pillows and 2 mattresses, and states that Dr. Larson has violated his constitutional rights by denying him these things (Doc. 71-1 at p. 41). The warden approved the grievance for emergency review on January 5, 2021 (Doc. 71-1 at p. 41-42). The Grievance Officer recommended denying the grievance because the issues had already been addressed in previous grievances, and the warden concurred with the denial. (Doc. 71-1 at p. 39). The grievance does not appear on the ARB log, and there is no record of a response from ARB.

## B. Grievances for Denial of Double Bedding

The record shows that in addition to the December 24, 2020 grievance, Plaintiff submitted two earlier grievances regarding the denial of a second pillow and mattress. He submitted the first on February 6, 2020 (Doc. 71-1 at p. 53). The grievance states that

---

[1] The Grievance Officer's Report includes a place for the inmate to sign if he wished to appeal the denial to the Director of the Illinois Department of Corrections ("IDOC"). Plaintiff's signature does not appear on the Grievance Officer's Report (Doc. 71-1 at p. 73). However, Plaintiff's signature also does not appear on the reports for grievances that Plaintiff and Defendants agree were appealed to the Director and ARB. Thus, Plaintiff's missing signature is not necessarily evidence that he did not further appeal the denial of the grievance.

he had a medical permit for two pillows and two mattresses at his last facility due to back pain and treatment after cataract surgery, but the doctor at Big Muddy has denied him a permit for double bedding. He then requests a second mattress and pillow (*Id.*). A counselor reviewed the grievance and denied it, stating that the doctor had determined extra mattresses and pillows was not medically indicated (*Id.*). The Grievance Officer denied review of Plaintiff's grievance because it failed to state dates when the incident occurred, and thus did not comply with DR.504.810, and the ARB denied review for the same reason (Doc. 71 at p. 57, 58). Plaintiff filed a second grievance regarding the denial of a permit for a second pillow and mattress on July 1, 2020 (Doc. 71-1 at p. 61). Per Plaintiff's request, the warden expedited the grievance for emergency review (*Id.*). The Grievance Officer recommended the grievance be denied, stating that the issue had been addressed in Plaintiff's previous grievance and additional bedding was not medically indicated (Doc. 71 at p. 54). The ARB again refused to review the grievance, stating that the grievance was not submitted in the timeframe outlined in DR.504.810 (Doc. 71 at p. 53).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The normal grievance process usually involves three steps. First, the offender must submit a grievance to their counselor within 60 days of the incident, occurrence, or problem, and after the counselor responds, the grievance goes to the grievance officer. *Id.* at § 504.810(a). The grievance officer tenders a recommendation to the warden within two months after receipt of the written grievance, "when reasonably

feasible under the circumstances." *Id.* at § 504.830(e). The warden then reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.* If the inmate is unsatisfied with the decision, he or she has 30 days from the date of the decision to appeal to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final decision, which should be issued "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

## LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to

do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). However, an inmate is required to exhaust only those administrative remedies that are available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829 F.3d at 864; *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

## DISCUSSION

In this case, there is a genuine dispute of material facts as to whether Plaintiff exhausted his administrative remedies.

As to the denial of a special diet, Larson and Jeffreys argue Plaintiff did not appeal a grievance to the ARB and thus has not exhausted his administrative remedies. Plaintiff claims that Big Muddy personnel removed at least one grievance from the ARB log or otherwise prevented the ARB review. In his reply brief, Larson argues that Plaintiff does not offer any evidence for this claim (Jeffreys did not file a reply). However, Plaintiff makes this assertion in an affidavit, and while the affidavit may be self-serving, it constitutes admissible evidence and can create an issue of material fact that precludes summary judgment. *See, e.g., Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (self-serving affidavits can create issues of material fact that preclude summary judgment). Thus, there is a dispute as to whether review by the ARB was an administrative remedy that was truly available to Plaintiff. *Cf. Jobes v. Godinez*, No. 15-CV-4481, 2018 WL 3474532, at *6 (N.D. Ill. July 19, 2018) (denying summary judgment for failure to exhaust where

Page 7 of 9

defendant claimed in an affidavit that he had filed grievances regarding lack of running water in his cell and never received any responses). Therefore, summary judgment regarding the special diet claim is inappropriate and must be denied. Resolving this issue will require an evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Jeffreys argues that although Plaintiff submitted two grievances regarding the denial of double pillows and mattresses to the ARB, because the ARB refused to review them for failure to comply with DR 504.180, Plaintiff did not exhaust his administrative remedies. However, section 504.180 does not require that an inmate include a specific date on the grievance, but that a grievance be submitted within 60 days of the discovery of the incident that formed the basis for it. *See* Ill. Admin. Code tit. 20, § 504.810 (grievance must be filed within 60 days after the discovery of the incident). Here, Plaintiff submitted the first grievance regarding the denial of double bedding on February 9, 2020, and although he did not provide a date on which Larson denied him a permit for double bedding, he had only been an inmate at the facility since January 29, 2020. Thus, he grieved the issue within 60 days of it occurring. Moreover, the grievance makes clear that he continues to be denied double bedding, thus the issue is ongoing and occurring on the day he submitted the grievance. Therefore, Plaintiff complied with section 504.810, and exhausted the administrative remedies available to him. *See Ingram v. Cunningham*, No. 20-CV-1313-RJD, 2022 WL 4385551, at *3 (S.D. Ill. Sept. 22, 2022) (denying summary judgment for failure to exhaust where ARB denied review of grievance because plaintiff did not provide a date for the occurrence in the grievance, but the issue was ongoing). Thus, Jeffreys is not entitled to summary judgment on the issue of exhaustion.

If either Defendant wants to continue to pursue the affirmative defense of failure to exhaust administrative remedies with regard to the denial of a special diet, they must request a *Pavey* hearing within 14 days of this Order. Jeffreys argument concerning failure to exhaust administrative remedies with regard to the denial of double bedding fails, and he is not entitled to a *Pavey* hearing on that issue. If no request for a *Pavey* hearing is made, the Court will enter a scheduling order for discovery on the merits of this case. Alternatively, the parties may request that this case be referred for a settlement conference.

## CONCLUSION

Defendant Larson's Motion for Partial Summary Judgment (Doc. 63) and Defendant Jeffreys's Motion for Summary Judgment (Doc. 68) are **DENIED.** As to the issue of denial of a special diet, Defendants must file a notice within **14 days** of this Order either withdrawing the affirmative defense of exhaustion or requesting a *Pavey* hearing. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify.

**IT IS SO ORDERED.**

**DATED: March 27, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**