IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BYRON E. ADAMS,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 3:21-CV-748-MAB |
| **DENNIS LARSON and LATOYA HUGHES,** | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court are a series of motions filed by Plaintiff Byron Adams and an additional motion filed by Defendants Dennis Larson and Latoya Hughes.[1] For the reasons set forth below, Plaintiff's motion for preliminary injunction is DENIED (Doc. 89); Plaintiff's motion to call witnesses to testify is DENIED (Doc. 101); Plaintiff's motion for hearing is DENIED (Doc. 114); Plaintiff's motion for affidavit and preliminary injunction is DENIED (Doc. 115); Plaintiff's motion to add exhibits is DENIED (Doc. 117); and Defendants' motion to strike is DENIED as MOOT (Doc. 118).

### PROCEDURAL AND FACTUAL BACKGROUND

On June 29, 2021, Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff's Complaint alleges that Defendants refused to continue his special

---

[1] Rob Jeffreys, the former Director of the Illinois Department of Corrections was named as a Defendant in this action pursuant to the Court's threshold Order (Doc. 15, p. 4). Consequently, Latoya Hughes, in her official capacity as the Director of the IDOC, has been substituted for Rob Jeffreys pursuant to Federal Rule of Civil Procedure 25(d).

diabetic diet and to permit him to have two pillows and two mattresses upon his transfer to Big Muddy Correctional Center ("Big Muddy") (Doc. 1; Doc. 15).

Specifically, Plaintiff is a diabetic inmate who was formerly housed at Stateville Correctional Center ("Stateville") (Doc. 15 at p. 2). At Stateville, Plaintiff received a special diabetic diet, twice-daily insulin, and numerous other medications (*Id.*). In addition, Plaintiff was permitted to have two pillows and two mattresses because of his bilateral cataract surgery and back pain (*Id.*).

In January 2020, Plaintiff was transferred to Big Muddy from Stateville (*Id.*). At Big Muddy, Plaintiff met with Defendant Larson, a doctor, to discuss his medical file (*Id.*). Defendant Larson informed Plaintiff that he could not continue Plaintiff's treatment regime or renew Plaintiff's permit for two pillows and mattresses because "the Administration" would not authorize it (*Id.*). Subsequently, Defendant Larson ordered x-rays of Plaintiff's back and diagnosed him with arthritis (*Id.*). Defendant Larson also prescribed Plaintiff muscle relaxers and pain medication (acetaminophen 325mg), but they did not adequately alleviate Plaintiff's pains (*Id.*). Plaintiff further states that Defendant Larson disregarded his repeated complaints of persistent pain and refused to issue him permits for double pillows and mattresses (*Id.*).

Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on two claims:

> Count 1:    Eighth Amendment claim against Larson for denying Plaintiff adequate medical care for his diabetes, back pain and cataract recovery; and
>
> Count 2:    [Americans with Disabilities Act and/or Rehabilitation Act] claim against [the IDOC Director] for failing to adequately accommodate

his diabetes, back pain and cataract recovery.

(*Id.* at pp. 3-4).

Plaintiff previously filed a motion for preliminary injunction (Doc. 34), along with several other motions (Docs. 42, 56, 57), that alleged that Defendant Larson had not been properly treating him and clipping his toenails, and had failed to provide a wheelchair, gloves, stockings, and diabetic shoes after ordering them "last year." (Doc. 34 at pp. 1-2). Plaintiff's prior motion requested relief by way of ordering Defendant Larson to cut his toenails and provide him with the items he previously ordered, and transferring him to another facility where his medical needs will be addressed (*Id.* at p. 5).

The Court denied Plaintiff's motion for preliminary injunction because the case had not moved past the exhaustion of administrative remedies stage (Doc. 62, p. 7). *See also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (exhaustion of administrative remedies is a precondition to suit); *Thompson v. Illinois Dep't of Corr.*, No. 3:15-CV-850-NJR-DGW, 2016 WL 5341198, at *3 (S.D. Ill. Sept. 23, 2016) ("Even if Plaintiff's claim for preliminary injunctive relief has some merit, he would not be entitled to such relief if the Court finds that he failed to exhaust his administrative remedies."). Additionally, the Court cautioned Plaintiff that his request for transfer to another facility was likely not something within the Court's power to order (Doc. 62 at p. 9). The Court also told Plaintiff that he would need to show how the issues in his motion for preliminary injunction directly relate to the issues raised in his complaint (*Id.*).

On March 27, 2023, the Court denied both Defendant Larson's motion for partial summary judgment on the issue of exhaustion and Defendant Jeffrey's motion for

summary judgment on the issue of exhaustion.[2] Thereafter, on April 3, 2023, Plaintiff filed the instant motion for preliminary injunction (Doc. 89). In the motion, Plaintiff argues he has been mistreated and neglected by medical staff at Big Muddy in retaliation for filing this action (*Id.* at p. 1). Plaintiff also alleges that after filing his prior motion for preliminary injunction, he requested a transfer to Dixon Correctional Center ("Dixon") (*Id.* at pp. 2-3). Plaintiff claims his request was "approved medically by the health care," but has since been denied or ignored by the administration in Springfield (*Id.* at pp. 2-3). Plaintiff asks the Court to order his transfer to Dixon (*Id.* at p. 3). Both Defendants have filed responses in opposition to Plaintiff's motion for preliminary injunction (Docs. 94, 105).

On April 27, 2023, Plaintiff filed a supplement to his motion for preliminary injunction, which requests permission to have witnesses testify as to matters concerning his motion for preliminary injunction (Doc. 101). Plaintiff subsequently filed a motion for hearing, which requests a prompt setting for a settlement conference (Doc. 114). Plaintiff then filed a motion for affidavit/motion for preliminary injunction, which does not facially request any additional relief but includes an affidavit written by Plaintiff that details how he has not been given a straight answer as to what happened with his transfer request (Doc. 115). On August 21, 2023, Plaintiff filed a motion to add exhibits/motion

---

[2] The Court found that summary judgment on the issue of exhaustion regarding Plaintiff's special diet claim was inappropriate because there was a dispute as to whether review by the Administrative Review Board was an administrative remedy that was truly available to him (Doc. 87 at pp. 7-8). However, the Court stated Defendants could further pursue this challenge by requesting an evidentiary hearing (*Id.*). Defendants did so (*see* Doc. 92), and the Court conducted an evidentiary hearing (Docs. 96, 97). Ultimately, the Court determined Plaintiff had exhausted his administrative remedies regarding his special diet claim because the administrative grievance process was rendered unavailable to Plaintiff (Doc. 111).

for preliminary emergency injunction (Doc. 117). In that motion, Plaintiff alleges further retaliatory acts and states additional medical concerns he is now facing (*Id.*). Finally, on August 31, 2023, Defendant Hughes filed a motion to strike Plaintiff's motion to add exhibits/motion for preliminary emergency injunction (Doc. 118). Defendant Hughes argues Plaintiff's filing at Doc. 117 should be stricken because it contains no new substantive allegations relevant to his pending motion for preliminary injunction and includes allegations raised by Plaintiff in a separate lawsuit (Doc. 118 at p. 2). Plaintiff filed a response that argues his motion to add exhibits merely provides additional evidentiary support and should not be stricken (Doc. 120).[3]

## DISCUSSION

I.  Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Specifically:

> To obtain a preliminary injunction, the moving party must show that (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola,* 809 F.3d 317, 323-24 (7th Cir. 2015); *Turnell v. CentiMark Corp.,* 796 F.3d 656, 661-62 (7th Cir. 2015). If the moving party makes this showing, the court then "weighs the competing harms to the parties if an injunction is granted or denied," "considers the public interest," and employs a "sliding-scale analysis" ("the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor"). *Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013).

---

[3] Plaintiff's response also argues that the Court should not permit Defendant Jeffreys to be substituted with Defendant Hughes. However, as noted in footnote 1, this substitution is authorized by Federal Rule of Civil Procedure 25(d) and has no impact on Plaintiff's claims.

*Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016); *see also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) ("We infer from *Winter* that a mere possibility of success [on the merits] is not enough."). Moreover, a preliminary injunction that orders the defendant to take an affirmative act rather than refrain from certain conduct is "cautiously viewed and sparingly issued." *Id.* (quoting *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir. 1997) (labeling this type of injunction as a "mandatory preliminary injunction")).

Additionally, when dealing with prisoner litigation, the Prison Litigation Reform Act ("PLRA") imposes limits upon the scope of the court's authority to enter an injunction in the corrections context. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Under the PLRA, preliminary injunctive relief 'must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.'" *Bashum v. Greene*, No. 23-3255, 2023 WL 6759616, at *2 (C.D. Ill. Oct. 12, 2023) (quoting 18 U.S.C. § 3626(a)(2)). The PLRA also emphasizes that in cases challenging prison conditions, "prison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer*, 682 F.3d at 683 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)); *see also* 18 U.S.C.A. § 3626(a)(2) ("The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]").

II.     <u>Plaintiff's Motion for Preliminary Injunction (Doc. 89)</u>

Plaintiff's instant motion for preliminary injunction alleges he is being harassed, mistreated, and retaliated against by the medical staff at Big Muddy (Doc. 89 at pp. 1-2).

Plaintiff also alleges he has been getting the runaround by those involved in the prisoner transfer office (*Id.* at pp. 2-3). Finally, Plaintiff argues his motion for preliminary injunction should be granted because he fears for his safety at Big Muddy as he is not receiving adequate medical care. Consequently, Plaintiff is seeking the injunctive relief of the Court ordering him to be transferred to Dixon. For the reasons discussed below, the Court finds Plaintiff is not entitled to the relief he seeks.

First, Plaintiff's motion for preliminary injunction fails to demonstrate a likelihood of success on the merits of his claims. *See Winter*, 555 U.S. at 20; *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (explaining that movant's showing of likelihood of success on the merits must be "strong"). Significantly, "[a] 'strong' showing [of the likelihood of success on the merits] … does not mean proof by a preponderance …. But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Tully*, 977 F.3d at 613. Here, Plaintiff's instant motion for preliminary injunction does not provide any explanation as to how he will prove the key elements of his claims (*see generally* Doc. 89). This alone dooms his motion.

Furthermore, as Defendant Hughes points out, Plaintiff's medical records demonstrate that he has been seen by medical staff at Big Muddy on numerous occasions, including being seen approximately 38 times between April 25, 2022, and April 8, 2023 (Docs. 105, 105-1). In other words, it is not as if Plaintiff is not receiving medical care. Instead, it is that he does not agree with the course of medical treatment he is receiving. Crucially, however:

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation marks and citation omitted). Therefore, while Plaintiff may disagree with the treatment he is currently receiving, his motion fails because he has not provided any evidence demonstrating that the treatment he is receiving at Big Muddy is "blatantly inappropriate." *See id.*; *Beletsky v. Litscher*, No. 01-C-4-C, 2001 WL 34379606, at *3 (W.D. Wis. Jan. 4, 2001) ("Petitioner is not entitled to whatever treatment he desires; he is entitled only to the level of treatment that meets the standards of the Eighth Amendment.").

In addition, Plaintiff's request for injunctive relief is particularly inappropriate because it requests relief of a different character than what he complains of and seeks in his Complaint (*see generally* Docs. 1, 15). *See Hallows v. Madison Cnty. Jail*, No. 18-CV-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) ("[A] preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit."). Here, Plaintiff's complaint seeks monetary damages for Defendants' conduct related to Plaintiff's medical treatment and accommodations. Yet, his instant motion for preliminary injunction seeks a court ordered transfer based upon an alleged failure to inform him of the outcome of his prison transfer application and retaliatory acts against him for filing this lawsuit (*see* Doc. 89). Neither of

those issues are directly related to Plaintiff's underlying claims in this matter.[4] *See Daniels v. Dumsdorff*, No. 19-CV-00394-NJR, 2019 WL 3322344, at *1 (S.D. Ill. July 24, 2019) (Denying injunctive relief because, among other things, "the claims pertain to individuals who are not parties in this action and the incidents described are outside the scope of the Complaint."); *Bird v. Barr*, No. 19-CV-1581, 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (Holding that a motion for preliminary injunction "is not a generic means by which a plaintiff can obtain auxiliary forms of relief that may be helpful to them while they litigate unrelated claims. To the contrary, this Court only possesses the power to afford preliminary injunctive relief that is *related* to the claims at issue in the litigation[.]"). Moreover, Plaintiff was specifically informed of this requirement in the Court's Order denying his past motion for preliminary injunction, wherein the Court advised Plaintiff that he would need "to show how the issues he is complaining of in the motion for preliminary injunction directly relate to the issues he brings in his complaint." (Doc. 62, p. 9).

Finally, the Court also DENIES Plaintiff's motion for preliminary injunction (Doc. 89) because "his request for a transfer to another institution is beyond the scope of what a court can order." *Brown v. Toney*, No. 22-CV-018, 2022 WL 17811370, at *1 (E.D. Wis. Dec. 19, 2022). Pertinently, Plaintiff was also advised of this fact in the Court's Order

---

[4] In fact, the issues Plaintiff complains of in his motion are more appropriately addressed by filing separate grievances and lawsuits, which Plaintiff admits he has done (Doc. 89 at p. 1-2). Therefore, by Plaintiff's own admission, there is a different remedy that Plaintiff could, and has, pursued to address the allegations he currently relies upon in the instant motion. *See also Brown v. Toney*, No. 22-CV-018, 2022 WL 17811370, at *1 (E.D. Wis. Dec. 19, 2022) (finding an adequate remedy at law existed because the allegations raised in the plaintiff's motion could be addressed by filing separate grievances, and after exhausting his administrative remedies, by filing another civil suit under 42 U.S.C. § 1983).

denying his prior motion for preliminary injunction (*see* Doc. 62 at p. 9). In addition, requesting transfer to a specific facility is unquestionably not the most narrowly-tailored and least intrusive means to address any of Plaintiff's allegations, whether it be the one's in his underlying complaint or those in the instant motion. *See Westefer*, 682 F.3d at 683 (pursuant to the PLRA, injunctive relief must narrowly drawn, extend no further than necessary, and use the least intrusive means necessary).

For all these reasons, the Court DENIES Plaintiff's motion for preliminary injunction (Doc. 89).[5]

III. <u>Plaintiff's Additional Motions to Supplement (Docs. 101, 115, 117)</u>

Plaintiff has also filed several addition motions to supplement his motion for preliminary injunction (Docs. 101, 115, 117). For the following reasons, the Court DENIES all three of these motions.

The first supplemental motion requests for Plaintiff to be permitted to call witnesses to testify (Doc. 101). Specifically, Plaintiff wants to call several witnesses to testify as to the status of his transfer request. For the reasons discussed above, Plaintiff has failed to establish how his frustrations with his transfer request's treatment is directly related to the issues raised in his Complaint. Therefore, the Court sees no reason as to why Plaintiff should be permitted to call numerous individuals to testify as to this unrelated matter. Accordingly, Plaintiff's motion is DENIED (Doc. 101).

---

[5] The Court has identified numerous other reasons why Plaintiff's motion for preliminary injunction should be denied. However, as the Court has already provided ample reasons to support its decision to deny the motion, no further analysis of the other shortcomings of Plaintiff's motion are discussed.

Plaintiff's next supplemental motion is labeled as a motion for affidavit/motion for preliminary injunction (Doc. 115). This motion does not directly request any apparent relief and instead contains an affidavit, which the Court presumes Plaintiff seeks to introduce to supplement his motion for preliminary injunction (Doc. 89). Just as with Plaintiff's prior supplemental motion, this motion is DENIED because Plaintiff's affidavit only recites his recollection of his transfer application process (Doc. 115 at p. 2). Again, because Plaintiff has failed to demonstrate how his transfer request is directly related to his underlying claims in this case, the Court finds there is no reason to permit Plaintiff to file supplemental documents that deal with an unrelated matter.

Finally, Plaintiff's third supplemental motion (Doc. 117) seeks to introduce additional exhibits related to his frustrations with the transfer process. Consequently, this motion is also DENIED for the reasons discussed above. Additionally, while Plaintiff's motion states that he now faces additional medical concerns, Plaintiff has not provided any evidence demonstrating that his new medical issues are directly related to or resulting from the issues raised in his Complaint (*Id.* at pp. 2-3). Moreover, even if Plaintiff had done so, he still has failed to narrowly tailor his requested injunctive relief as required by the PLRA. *See Westefer*, 682 F.3d at 683.

IV.     Plaintiff's Motion for Hearing (Doc. 114)

Plaintiff has also filed a motion requesting a settlement conference (Doc. 114 at p. 2). Notably, however, Defendants have not filed a response to this motion but they have filed subsequent documents addressing Plaintiff's other filings. Consequently, while the Court always encourages the parties to keep an open mind about a negotiated resolution,

the Court will not force Defendants to attend such a conference if they have no desire or authority to negotiate the case. This is especially true, given the current procedural posture of the case. Consequently, Plaintiff's motion is DENIED without prejudice.[6]

V.      Defendant Hughes' Motion to Strike (Doc. 118)

Finally, Defendant Hughes filed a motion to strike Plaintiff's motion to add exhibits/motion for preliminary emergency injunction (Doc. 118). However, because the motion Defendant Hughes' seeks to strike is denied for the reasons discussed above, Defendant Hughes' motion is DENIED as MOOT.

## CONCLUSION

For the reasons outlined above, Plaintiff's motion for preliminary injunction is DENIED (Doc. 89); Plaintiff's motion to call witnesses to testify is DENIED (Doc. 101); Plaintiff's motion for hearing is DENIED (Doc. 114); Plaintiff's motion for affidavit and preliminary injunction is DENIED (Doc. 115); Plaintiff's motion to add exhibits is DENIED (Doc. 117); and Defendants' motion to strike is DENIED as MOOT (Doc. 118).

**IT IS SO ORDERED.**

**DATED:  November 2, 2023**

                                                                        s/ Mark A. Beatty
                                                                        **MARK A. BEATTY**
                                                                        **United States Magistrate Judge**

---

[6] Plaintiff and/or Defendants are free to file a renewed motion for a mediation or settlement conference at any time. However, before doing so, the Court encourages the parties to talk amongst themselves to determine whether settlement negotiations would be fruitful, especially prior to the summary judgment deadline.